### HAWKINS et al. v. E. I. DU PONT DE NEMOURS & CO., Inc.

#### No. 6333.

United States Court of Appeals
Fourth Circuit.

Argued Oct. 16, 1951.

Decided Nov. 5, 1951.

T. Nelson Parker, Richmond, Va. (Parker, Fairbank, Neal & Harris and Thomas N. Parker, Jr., all of Richmond, Va., on brief), for appellants.

Aubrey R. Bowles, Jr., Richmond, Va. (H. Armistead Boyd, Richmond, Va., on brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

The complainants in the District Court brought suit on April 24, 1951 under the Fair Labor Standards Act of 1938, 52 Stat. 1060, as amended, 29 U.S.C.A. §§ 201 to 219, to recover from their employer, E. I. DuPont de Nemours & Company, Inc. unpaid overtime compensation for services rendered during a period of two years prior to suit. They claimed that they were required to work for 50 minutes in excess of 40 hours per week, i. e., 10 minutes in excess of 8 hours on each day of the 5-day work week, and that they received no pay for the overtime. They sued for $2106.00 and in addition for an equal amount as liquidated damages and a reasonable counsel fee under Section 16 of the statute, 29 U.S.C.A. § 216.

The case came before the court on motion of the defendant to dismiss the bill of complaint which, with supporting affidavits contained allegations in effect as follows: The complainants were employed as workers in a cafeteria maintained by the company in its plant in Chesterfield County, Virginia, which was engaged in the production of goods for interstate commerce. The plant was completely fenced in and guarded at the entrances and the employees were not allowed to leave the plant during their work shift except for sickness or other good cause, and the cafeteria was the only available place for them to eat. The work performed by the complainants during the overtime period of ten minutes per working day consisted of working with the outgoing cafeteria operators in balancing the cash and making out required reports, and constituted an integral part of their principal activities. The motion to dismiss was supported by affidavit and was based on the ground: (1) because they were not employed in the production of goods for commerce or "in any closely related process or occupation directly essential to the production" of goods for commerce, as provided in Section 3 of the statute as amended by the Act of October 26, 1949, Ch. 736, 29 U.S.C.A. § 203(j), which became effective under the provisions of Section 16(a) of the Act on January 25, 1950, 29 U.S.C.A. § 202 note; and (2) because the period spent in overtime work was so short as to be *de minimis* and unworthy of consideration. The District Judge, being of the opinion that the first ground on which the motion was based was well taken, dismissed the complaint.

The company relies upon the tendency to restrict or explain the broad implications of the decision of the Supreme Court in Kirschbaum Co. v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638, which is mani-

fest in McLeod v. Threlkeld, 319 U.S. 491, 63 S.Ct. 1248, 87 L.Ed. 1538, and Armour & Co. v. Wantock, 323 U.S. 126, 65 S.Ct. 165, 89 L.Ed. 118, and is also apparent in the Amendment of 1949 to Section 3(j) of the statute whereby the concluding words of the subsection, descriptive of activities associated with the production of goods which are covered by the Act, were changed from employment "in any process or occupation necessary to the production thereof" to "in any closely related process or occupation directly essential to the production thereof".

Prior to the passage of the Amendment, the bearing of the statute upon the activities of workers in cook-shops or cafeterias had been considered in a number of cases with varying results which depended in greater or less degree upon the question whether the eating place was an integral and necessary part of the employer's plant or merely a convenience for workers who had access to other cafeterias or restaurants in the neighborhood. The opinion has been expressed that the provision of sustenance for the workers who operate machines is as essential as the furnishing of power to the machines themselves and that the feeding of employees conveniently so that they need not leave the plant is an effective step in maintaining production. Basik v. General Motors Corp., 311 Mich. 705, 19 N.W.2d 142, 159 A.L.R. 966. Weight has been given to factory rules which require the workers to remain on the premises during the workday; see McComb v. Factory Stores Co., D.C.N.D. Ohio, 81 F.Supp. 403; and to the fact that in some cases the place of operation is so remote from populous settlements that the provision for food at the situs of the work is essential. Hanson v. Lagerstrom, 8 Cir., 133 F.2d 120; Consolidated Timber Co. v. Womack, 9 Cir., 132 F.2d 101; cf. Bayer v. Courtemanche, D.C.Conn., 76 F.Supp. 193; Kuhn v. Canteen Food Service, D.C.N.D.Ill., 77 F.Supp. 585; Tipton v. Bearl Sprott Co., D.C.S.D.Cal., 93 F.Supp. 496.

After the passage of the Amendment of 1949 the question was considered in an Interpretative Bulletin of the Administrator of the Wage and Hour Division of the Department of Labor effective on May 17, 1950 under the authority of Section 10 of the Portal-to-Portal Act, 29 U.S.C.A. § 259, which is set in the Cumulative Annual Pocket Part appended to 29 U.S.C.A. § 201 et seq., and is in part as follows:

"§ 776.18 * * *

"(b) *Employments not directly essential to production distinguished.* Employees of a producer of goods for commerce are not covered as engaged in such production if they are employed solely in connection with essentially local activities which are undertaken by the employer independently of his productive operations or at most as a dispensable, collateral incident to them and not with a view to any direct function which the activities serve in production. * * * To illustrate further, a producer may engage in essentially local activities as a landlord, restaurateur, or merchant in order to utilize the opportunity for separate and additional profit from such ventures or to provide a convenient means of meeting personal needs of his employees. Employees exclusively employed in such activities of the producer are not engaged in work 'closely related' and 'directly essential' to his production of goods for commerce merely because they provide residential, eating, or other living facilities for his employees who are engaged in the production of such goods. Such employees are to be distinguished from employees like cooks, cookees, and bull cooks in isolated lumber camps or mining camps, where the operation of a cook-house may in fact be 'closely related' and 'directly essential' or, indeed, indispensable to the production of goods for commerce.

"Some specific examples of the application of these principles may be helpful. * * * Similarly, employees of the producer or of an independent employer who are engaged only in maintaining company facilities for entertaining the employer's customers, or in providing food, refreshments, or recreational facilities, including restaurants, cafeterias and snack bars, for the producer's employees in a factory, or in operating a children's nursery for the convenience of employees who leave young children there during working hours, would

not be doing work 'directly essential' to the production of goods for commerce."

In our opinion, the reasoning in the decisions to which we have referred as well as the Interpretative Bulletin of the Wage and Hour Administrator warrant the conclusion that the services rendered by the cafeteria workers under the circumstances alleged in the complaint were covered by the statute, unless they may be found to be *de minimis*. We are not prepared to say that in every instance a cafeteria maintained for the accommodation of the employees in a plant which is engaged in the production of goods for commerce is such an integral and essential part of the enterprise that there is no distinction, so far as the statute is concerned, between cafeteria employees and workers actually engaged in the manufacture of merchandise. But we find no substantial distinction between the conditions surrounding the cafeteria workers in the defendant's plant and those relating to cooks and similar workers in isolated mining or lumber camps mentioned in the bulletin. All of the employees of the defendant were confined to the plant under guard during their working hours, and hence it may fairly be said that the activities of the cafeteria employees were closely related to and directly essential to the production of merchandise.

Accordingly, the judgment dismissing the bill of complaint must be reversed. We do not undertake to pass upon the sufficiency of the evidence that may finally come before the court at the hearing upon the merits; nor do we undertake to pass upon the additional defense that the activities of the complainants were so insignificant in amount as to be unworthy of consideration. A similar defense has been made in prior cases involving periods of time as long or longer than ten minutes a day overtime claimed by the complainants, and the defense has received careful consideration and in some instances has been sustained. See Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 691, 692, 66 S.Ct. 1187, 90 L.Ed. 1515; Id., D.C., 69 F.Supp. 710; Id., 6 Cir., 162 F.2d 200; Frank v. Wilson & Co., 7 Cir., 172 F.2d 712; Green v. Planters Nut & Chocolate Co., Inc., 4 Cir., 177 F.2d

187. The question can be determined only on an examination of facts in more detail than is possible under the allegations of the complaint. Our conclusion is that the bill of complaint is sufficient to warrant a trial upon the merits upon which the parties will be free to produce any evidence relative to the issues so that the court may decide whether the activities of the complainants were covered by the statute, and if so, whether they were performed to a substantial extent beyond the hours fixed by the statute so as to entitle the complainants to overtime compensation, together with liquidated damages and attorneys' fees.

The judgment of the District Court is reversed and the case remanded for further proceedings.

Reversed and remanded.