**INTERNATIONAL BUSINESS INVESTMENTS, INC.**

v.

**The UNITED STATES.**

**No. 251–85C.**

United States Claims Court.

Feb. 11, 1987.

Donald E. Barnhill, San Antonio, Tex., for plaintiff.

Genevieve Holm, with whom were Asst. Atty. Gen. Richard K. Willard, David M. Cohen, and Sandra P. Spooner, Washington, D.C., for defendant. Mark C. Ramsey and Pat Duryea, U.S. Dept. of Labor, Washington, D.C., of counsel.

## ORDER ON PLAINTIFF'S MOTION AND DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT

WHITE, Senior Judge.

The plaintiff, International Business Investments, Inc., is a Texas corporation that provides guard and security services.

During the period beginning July 1, 1980, and extending through June 30, 1983, the plaintiff was under contract to provide, and it did provide, guard services to the United States at the Federal Building, the U.S. Post Office, the U.S. Courthouse, and the Veterans Administration Building in San Antonio, Texas. The contracting agency for the United States was the General Services Administration (GSA).

The plaintiff sues in the present action for the sum of $14,510, which was withheld as liquidated damages from amounts otherwise contractually due the plaintiff. The liquidated damages were assessed because of alleged violations by the plaintiff of the Contract Work Hours and Safety Standards Act (CWHSSA), 40 U.S.C. §§ 327–33 (1982 & Supp. III 1985).

The case is now before the court on the plaintiff's motion and the defendant's cross-motion for summary judgment.

### The Facts

There seems to be no genuine issue between the parties concerning the material facts that are necessary for the disposition

of this case. Such facts will be outlined in this part of the opinion.

The guards employed by the plaintiff worked 8–hour shifts and 40–hour workweeks at their assigned posts of duty in the several federal buildings previously mentioned. Before the beginning of each shift, the guards first went to a designated room in the Federal Building, where they obtained their weapons, and then they proceeded to their assigned duty stations, arriving there in time for the beginning of the shift. After the end of each shift, the guards left their assigned duty stations, returned to the designated room in the Federal Building, and turned in their weapons.

The guards assigned to duty in the Federal Building, where the weapons were kept during off-duty hours, are not involved in the present case.

The U.S. Courthouse in San Antonio is located near the Federal Building. The guards assigned to duty in the U.S. Courthouse, upon obtaining their weapons in the Federal Building, walked the short distance to the U.S. Courthouse before beginning a shift; and, after the end of the shift, they walked the short distance back to the Federal Building and turned in their weapons. These procedures required approximately 10 minutes per day.

The U.S. Post Office in San Antonio is located about 1 mile from the Federal Building. The guards assigned to duty in the U.S. Post Office, upon obtaining their weapons in the Federal Building, traveled by automobile to the U.S. Post Office before beginning a shift. Then, at the end of the shift, they again traveled by automobile back to the Federal Building and turned in their weapons. These procedures required approximately 30 minutes per day.

The Veterans Administration Building in San Antonio is also located a substantial distance from the Federal Building. The guards assigned to duty in the Veterans Administration Building also spent approximately 30 minutes per day in obtaining their weapons in the Federal Building and traveling to the Veterans Administration

Building before the beginning of a shift, and then, after the end of the shift, in traveling back to the Federal Building and turning in their weapons.

The plaintiff paid the guards the regular wages for working the 8–hour shifts and 40–hour workweeks at their assigned duty stations, but did not compensate the guards assigned to duty in the U.S. Courthouse, in the U.S. Post Office, and in the Veterans Administration Building for the time spent before and after each shift in obtaining and turning in their weapons, and in traveling between the Federal Building and the respective buildings to which they were assigned.

## Administrative Proceedings

Sometime before June 2, 1983, the United States Department of Labor (DOL) conducted an investigation of the plaintiff's contract performance to determine whether the plaintiff was complying with the provisions of the CWHSSA. The DOL determined that the plaintiff had violated the provisions of the CWHSSA by failing to pay overtime compensation to the guards working in the U.S. Courthouse, in the U.S. Post Office, and in the Veterans Administration Building for the extra time that they spent before and after each shift in obtaining and turning in their weapons, and in traveling between the Federal Building and the respective buildings to which they were assigned. The DOL further found that 13 affected employees were entitled to $1,382.22 in back wages, which the plaintiff promptly paid, and that the plaintiff owed the United States $14,510 in liquidated damages.

By means of a letter dated September 4, 1984, the GSA contracting officer requested the plaintiff to state its reasons, if any, why liquidated damages should not be assessed. The plaintiff responded under the date of October 19, 1984. On November 19, 1984, the contracting officer, pursuant to 40 U.S.C. § 330(c) (1982), submitted the matter of the assessment of liquidated damages against the plaintiff to the Com-

missioner of the Public Buildings Service, GSA (acting for the head of the agency), for review. In doing so, the contracting officer recommended that the assessment of liquidated damages should be waived in this case because (in the view of the contracting officer) the plaintiff's violations of the CWHSSA were inadvertent.

On March 1, 1985, the Commissioner of the Public Buildings Service, GSA, rendered his decision on the assessment of liquidated damages against the plaintiff. This was the final administrative decision in the case. The Commissioner rejected the recommendation of the contracting officer that the liquidated damages be waived on the ground that the plaintiff's violations of the CWHSSA were inadvertent. In this connection, the Commissioner said that "I cannot find any evidence that IBI [the present plaintiff] exercised due care before it violated the CWHSSA." The Commissioner then determined "that International Business Investments, Inc., is liable to the United States for liquidated damages in the amount of $14,510 for violations of the CWHSSA * * *."

Following the Commissioner's decision, the plaintiff timely filed its complaint in this court.

### Discussion

The CWHSSA provides in part as follows (40 U.S.C. § 328):

(a) Notwithstanding any other provision of law, the wages of every laborer and mechanic employed by any contractor or subcontractor in his performance of work on any contract * * * [to which the United States or any agency or instrumentality thereof is a party] shall be computed on the basis of a standard workweek of forty hours, and work in excess of such standard workweek shall be permitted subject to provisions of this section. For each workweek in which any such laborer or mechanic is so employed such wages shall include compensation, at a rate not less than one and one-half times the basic rate of pay, for all hours worked in excess of forty hours in the workweek.

(b) The following provision shall be a condition of every [such] contract * * *:

(1) No contractor or subcontractor contracting for any part of the contract work which may require or involve the employment of laborers or mechanics shall require or permit any laborer or mechanic, in any workweek in which he is employed on such work, to work in excess of forty hours in such workweek except in accordance with the provisions of this subchapter; and

(2) In the event of the violation of the provisions of paragraph (1), the contractor and any subcontractor responsible therefor shall be liable to such affected employee for his unpaid wages and shall, in addition, be liable to the United States * * * for liquidated damages as provided therein. Such liquidated damages shall be computed, with respect to each individual employed as a laborer or mechanic in violation of any provision of this subchapter, in the sum of $10 for each calendar day on which such individual was required or permitted to work in excess of the standard workweek of 40 hours without payment of the overtime wages required by this subchapter. * * *

The contract provisions involved in this case included those mandated by the CWHSSA.

The plaintiff contends in its brief, however, that the provisions of the Portal-to-Portal Act of 1947 (29 U.S.C. §§ 216(d), 251–62 (1982)) excused the plaintiff from having to pay overtime compensation to guards in San Antonio for the time that they spent before the beginning and after the end of each shift in obtaining and turning in weapons, and in traveling between the Federal Building and the other buildings to which they were assigned. The section relied on by the plaintiff, 29 U.S.C. § 254(a), provides in part as follows:

(a) Except as provided in subsection (b) of this section [which is not applicable to this case], no employer shall be subject to any liability or punishment under

the Fair Labor Standards Act of 1938, as amended, the Walsh-Healey Act, or the Bacon-Davis Act, on account of the failure of such employer to pay an employee minimum wages, or to pay an employee overtime compensation, for or on account of any of the following activities of such employee engaged in on or after May 14, 1947—

(1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and

(2) activities which are preliminary to or postliminary to said principal activity or activities,

which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

In connection with the applicability of section 254(a), the Supreme Court has indicated that the pre-shift and post-shift activities of employees are compensable if such activities are an integral part of the work which the employees were hired to perform. *See Steiner v. Mitchell,* 350 U.S. 247, 256, 76 S.Ct. 330, 335, 100 L.Ed. 267 (1956). Moreover, this court's predecessor, the United States Court of Claims, and this court have indicated that the pre-shift and post-shift time spent by guards in obtaining and turning in their weapons, and in going between the place where the weapons are obtained and the various assigned places of duty, are integral parts of the work which guards are hired to perform. *See Baylor v. United States,* 198 Ct.Cl. 331, 337, 340 (1972); *Whelan Security Co. v. United States,* 7 Cl.Ct. 496, 497–99 (1985).

■ Consistent with the precedents just cited, the court concludes that section 254(a) did not exempt the plaintiff from paying its guards overtime compensation under the CWHSSA for the pre-shift and post-shift activities previously discussed in this order. Indeed, the plaintiff itself, upon learning of the Commissioner's deci-

sion, apparently did not object to the overtime compensation aspect of the decision, and promptly paid any guards the respective amounts of additional compensation due them under the Commissioner's decision. The plaintiff's real objection to the decision seemingly relates only to the assessment of liquidated damages against the plaintiff.

The plaintiff contends, first, that it should be excused from the payment of liquidated damages because its violations of the CWHSSA were inadvertent, notwithstanding the exercise of due care on its part. In this connection, the CWHSSA provides that a contractor or subcontractor may be relieved of liability for liquidated damages upon a determination that the contractor or subcontractor "violated the provisions of this subchapter inadvertently notwithstanding the exercise of due care * * *" (40 U.S.C. § 330(c)).

■ The plaintiff says that it exercised due care because it acted consistently with a purported industry custom of not compensating guards for the types of pre-shift and post-shift activities at issue in this case. The plaintiff, however, has not cited any judicial authority—and none has been found—to support the view that compliance with industry custom satisfies the requirement of due care, as set out in the CWHSSA. The weakness of this position, moreover, is shown by reference to tort law, where it is well established that compliance with custom is, at best, only inconclusive evidence of whether a party has exercised due care. *See* Restatement (Second) of Torts § 295A (1965). It may be noted that the plaintiff did not seek legal advice (*see Whelan,* 7 Cl.Ct. at 500–01) or request an interpretative ruling from proper administrative authority on this matter.

Consequently, the court holds that the plaintiff has not made an adequate showing that its violation of the CWHSSA was inadvertent, notwithstanding the exercise of due care on its part, to justify the court in overturning the decision of the Commissioner that the plaintiff was subject to liq-

uidated damages because of such violations.

The plaintiff also contends that it should be relieved of liability for the payment of liquidated damages because its violations of the CWHSSA fall within the so-called *de minimis* doctrine. Under this doctrine, which was announced by the Supreme Court in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692, 66 S.Ct. 1187, 1194, 90 L.Ed. 1515 (1946), an employer may be excused from liability for failing to pay employees overtime compensation when the amount of overtime is small. As the Supreme Court stated, "[w]hen the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded."

The Court of Claims held that 23 minutes per day devoted by guards to necessary pre-shift and post-shift activities could not properly be regarded as *de minimis* (*see Baylor*, 198 Ct.Cl. at 353, 366), and this court has held that 15 minutes per day devoted by guards to necessary pre-shift and post-shift activities cannot properly be regarded as *de minimis* (*see Whelan*, 7 Cl.Ct. at 499). Accordingly, in the present case, the court rejects the plaintiff's reliance on the *de minimis* doctrine with respect to those guards assigned to duty in the U.S. Post Office and in the Veterans Administration Building, who spent approximately 30 minutes per day before the beginning and after the end of the regular 8–hour daily shift in obtaining and turning in their weapons, and in traveling between the room in the Federal Building where the weapons were kept during off-duty hours and their respective assigned posts of duty.

On the other hand, the extant case law seems to establish that a period of 10 minutes or less per day devoted by an employee to necessary pre-shift and post-shift activities is *de minimis*. *See Lindow v. United States*, 738 F.2d 1057, 1062 (9th Cir.1984); *Bantom v. United States*, 165 Ct.Cl. 312, 318 (1964); *E.I. Du Pont De Nemours & Co. v. Harrup*, 227 F.2d 133,

135–36 (4th Cir.1955); *Green v. Planters Nut & Chocolate Co.*, 177 F.2d 187, 188 (4th Cir.1949). Accordingly, the 10 minutes per day which the guards who worked in the U.S. Courthouse devoted to the necessary pre-shift and post-shift activities should properly be regarded as *de minimis*. The court holds, therefore, that the plaintiff should not be held liable for the payment of liquidated damages on the basis of its failure to pay these guards overtime compensation for the extra 10 minutes per day that they worked.

*Conclusion*

For the reasons previously stated in the order, the court concludes that the plaintiff is entitled to recover an amount representing the liquidated damages withheld by the defendant with respect to guards assigned to duty in the U.S. Courthouse, and that the plaintiff is not entitled to recover any liquidated damages withheld by the United States with respect to guards assigned to duty in the U.S. Post Office or in the Veterans Administration Building.

Accordingly, the plaintiff's motion for summary judgment is granted in part and denied in part, and the defendant's cross-motion for summary judgment is granted in part and denied in part.

The parties are allowed a period of 30 days from the date of this order within which to file with the court a stipulation setting out the amount of the judgment to which the plaintiff is entitled in accordance with the decision announced in this order.

No costs.

IT IS SO ORDERED.