**THOMPSON v. F. W. STOCK & SONS, Inc.**
**Civ. A. No. 3018.**

United States District Court
E. D. Michigan, S. D.
Sept. 15, 1950.

214

Fred C. Culver, Hudson, Mich., Major Bird and Bourns & Bird, all of Adrian, Mich., for plaintiffs.

George C. Tilley and Miller, Canfield, Paddock & Stone, all of Detroit, Mich., for defendant.

LEVIN, District Judge.

This action was commenced in 1941 by Blair Thompson on behalf of himself and other similarly situated employees of the defendant's flour mill located at Hillsdale, Michigan, to recover unpaid minimum wages and overtime compensation, pursuant to the provisions of the Fair Labor Standards Act of 1938, 29 U.S.C.A. §§ 201-216. The delay in bringing about a determination in this action has been occasioned in part by the illness of the judge before whom it was tried and his death before his decision was announced, and subsequently by the incapacity of counsel for the plaintiffs to

continue to represent his clients. The defendant served a supplemental answer interposing the defenses set out in Sections 2 and 9 of the Portal-to-Portal Act, 29 U.S.C. A. §§ 252, 258, which became effective more than three years after the date of the hearing.

Defendant's counsel and recently substituted counsel for the plaintiffs have agreed that the issues may now be submitted for determination upon the record made before the judge who heard the case. Violations are charged for the period from October 24, 1938, the effective date of the Act, to February 1, 1941. During this period defendant employed approximately one hundred people. There have been no complaints of violations of the Act subsequent to February 1941 when the defendant's employees were organized following a strike and a contract was entered into between the newly recognized union and the employer.

In a conference with me counsel agreed that the complaint be dismissed as to a number of the plaintiffs and that a watchman, Howard Young, be deemed entitled to overtime compensation in the amount of $157.-76. The remaining plaintiffs, twenty-eight in number, may be classified as follows: Ten millers and oilers, sixteen flour and feed packers and two engineers. It is not disputed that these twenty-eight plaintiffs were all engaged in the production of goods for interstate commerce.

The principal issue is whether a period allotted for lunch was a free period, as contended by the defendant, or whether, as the plaintiffs contend, the duties and responsibilities of the employees were continuing, so that the time they spent on the employer's premises during the agreed lunch period constituted working time within the meaning of the Act. If the court finds the lunch time was working time it will be necessary to consider whether the provisions of the Portal-to-Portal Act, 29 U.S.C. A. § 251 et seq., bar recovery.

Prior to the effective date of the Act, defendant's mill was operated twenty-four hours a day, six days a week, with three eight hour shifts. All the plaintiffs were paid on an hourly basis which normally gave them compensation for a forty-eight hour week. The time required for eating lunch was not deducted from hours worked in computing pay. When the statutory maximum workweek of forty-four hours became effective in October 1938, in order to continue a twenty-four hour operation of the mill with the three shifts, it was agreed that during the first year of the Act's operation there be deducted from the workers' time a lunch period which was set as forty minutes. A compensatory increase was made in their hourly rate so that their take-home pay would not be reduced. The actual starting and stopping time for these employees remained the same. The forty minute period reduced the workweek precisely to the statutory maximum. In other words, these employees were simply credited with a forty-four hour week instead of the previous forty-eight hour week.

In October 1939, when the statutory maximum workweek became forty-two hours, the defendant's officers fixed the workweek at forty hours, notwithstanding the fact that the forty hour week did not become mandatory under the Act until a year later. This reduction in the workweek to forty hours was contrived by allotting eighty minutes as a lunch period for the millers and oilers. The lunch period for the packers and feeders remained at forty minutes but their shifts were shortened by forty minutes, and in their departments the eight hour shifts were completed by relief packers obtained from a loading gang. Hourly rates were increased to maintain take-home pay.

The defendant does not deny that the two engineers in its employ could not leave their engines unattended at any time during their shift because a constant watch was required for the safe and efficient operation of the engines. Their lunches were eaten at various times during the period of the shift and sometimes their responsibilities required them actually to attend the operation of the machinery while eating. The defendant maintains, however, that it shortened the workday for these two employees by a corresponding period of forty minutes during the first year following the effective

date of the Act, October 1938 to September 1939, and an additional forty minutes the second year from October 1939 to February 1941. The court finds that the workday was not shortened at all during the first year but was shortened forty minutes at the beginning of the succeeding year. Thus these two employees were in fact working forty minutes each day during the period in issue for which they were not paid.

The duties of the millers, oilers and flour and feed packers were related with the operation of the mill machinery. This machinery was not stopped at any time during the entire twenty-four hour period, except in the case of a serious breakdown. There were frequent choke-ups in the operation of the machinery requiring constant attention and these employees were required to stand by and be on the alert for these occurrences. Indeed, their lunch periods were frequently interrupted by emergencies which required their immediate attention. They were not furnished a relief man. The employees were, in fact, instructed by their superiors not to leave the premises but to eat their lunch in the immediate vicinity of their work and to return to their work as soon as they had finished eating.

These plaintiffs have amply sustained the burden of proving that they did not have a free lunch period which they could utilize in their own interests and that their duties and responsibilities to their employer were continuous during this period. Time spent predominantly for the employer's benefit during a period, although designated as a lunch period or under any other designation, nevertheless constitutes working time compensable under the provisions of the Fair Labor Standards Act. Armour & Co. v. Wantock, 323 U.S. 126, 65 S.Ct. 165, 89 L.Ed. 118; Skidmore v. Swift & Co., 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124. The picture is clear. When the Act became effective in October 1938 the defendant merely changed its manner of timekeeping so as to credit each man with a reduced number of hours to reduce the hours worked within the statutory period, and made an increase in the hourly wage rate to maintain the same take-home pay; but this new bookkeeping practice, even though the take-home pay remained undiminished, may not be permitted to defeat the spirit and intent of the legislation.

The question then is: Does the Portal-to-Portal Act bar the plaintiffs' right to recovery? It would serve no useful purpose here to set out the well-known provisions of the Act or its legislative history which followed Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515. The defendant's president and bookkeeper expressed accord with the position of the plaintiffs that the defendant company was by the contract of employment required to pay for all working time and overtime compensation for all hours worked in excess of the statutory maximum. The court having found that these employees are basing their claims for compensation for the usual activities performed during all the time they were in their respective shifts and that the so-called lunch period was, in fact, working time covered by the contract of employment, the claims are not barred by the Portal-to-Portal Act. The provisions of the Act were never intended to bar recovery under facts similar to those found in this case. Compare Central Missouri Telephone Co. v. Conwell, 8 Cir., 170 F.2d 641. See also Michigan Window Cleaning Co. v. Martino, 6 Cir., 173 F.2d 466; Smith v. Cleveland Pneumatic Tool Co., 6 Cir., 173 F.2d 775.

Counsel have agreed upon a computation of hours over the statutory work day maximum to be credited to each employee having a claim arising out of the lunch periods. These hours, of course, must be compensated at one and a half times the regular hourly rate then being received by the employee. Plaintiffs have also submitted computations covering all the straight time hours made up of lunch hour credits which fall within certain workweeks in which the total number of hours worked are less than the statutory maximum, and for such straight time plaintiffs claim compensation at the regular rate then being received by them. Defendant denies that they are entitled to such compensation in this action and urges that they be limited here to the recovery of overtime compensation. The complaint alleges that it is an

action to recover minimum wages as well as overtime compensation. Such recovery is provided for under the provisions of the Act, 29 U.S.C.A. § 201 et seq. Travis v. Ray, D.C., 41 F.Supp. 6. It is well settled that the calculation of the regular and overtime rates is to be regarded in the same class as an employee's right to the statutory minimum wage. Robertson, et al. v. Alaska Juneau Gold Mining Co., 9 Cir., 157 F.2d 876, and cases therein cited.

A judgment on notice may be entered which shall provide for the payment of regular and overtime compensation, in accordance with the schedule considered by the court at the last conference with counsel. At that time the court will fix a fee for the attorney for the plaintiffs. The defendant has shown "to the satisfaction of the court that the act or omission" which gave rise to this action was in good faith, and viewing all the facts as they existed at the date of the violations, the court is of the opinion that the defendant had reasonable grounds for believing that its conduct was not a violation of the Fair Labor Standards Act. The court, therefore, will award no liquidated damages. Sec. 11 of the Portal-to-Portal Act, 29 U. S.C.A. § 260.