James P. MITCHELL, Secretary of Labor, United States Department of Labor, Appellant,

v.

Lloyd H. MOORE, an Individual d/b/a Garrard Mills, Appellee.

No. 12905.

United States Court of Appeals Sixth Circuit.

Jan. 16, 1957.

Bessie Margolin, Washington, D. C. (Stuart Rothman, Harry A. Tuell, Dept. of Labor, Washington, D. C., Jeter S. Ray, Regional Attorney, Nashville, Tenn., on the brief), for appellant.

P. McKinley Harris, Louisville, Ky. (P. McKinley Harris, William S. Love, Louisville, Ky., on the brief), for appellee.

Before MARTIN, MILLER and STEWART, Circuit Judges.

SHACKELFORD MILLER, Jr., Circuit Judge.

This action was brought by the appellant, Secretary of Labor, under Sec-

tion 17 of the Fair Labor Standards Act, as amended, to enjoin the appellee from violating the minimum wage, overtime, record keeping, and shipment provisions of the Act. Sec. 201 et seq., Title 29, U.S.C.A. The facts are undisputed and the sole question for decision is whether appellee's employees are engaged in the production of goods for commerce within the coverage of the Act. The following summary of the facts is sufficient to present the issue.

Appellee is engaged in manufacturing and processing livestock and poultry feed in Garrard County, Kentucky. His customers are farmers and dealers who resell to farmers, and are located in Kentucky within approximately 75 miles of appellee's place of business. Substantial quantities of livestock and poultry which have been raised by appellee's customers on his manufactured feeds are sold to meat producers or dealers, who regularly ship them to various destinations outside of Kentucky. In addition, certain products derived from them, such as milk, cream, and wool, regularly reach points outside of Kentucky. Various basic elements, such as calcium, carbon and phosphates, when included in livestock feed or poultry feed, are assimilated by the livestock or poultry to which they are fed to meet the nutritional requirements of the animal for energy, growth, lactation and reproduction. The body building substances, upon entering the body of the livestock or the poultry, are digested, and are absorbed, assimilated, or eliminated by such livestock or poultry. The quantity and value of the livestock and poultry and their products are increased because of the feed consumed. Natural grasses and forage could not be used alone for the profitable production of livestock and poultry, and if appellee's customers did not purchase commercial feeds from the appellee, it would be necessary to, and they would, purchase similar feeds elsewhere.

The District Judge ruled that appellee's employees were not engaged in commerce or in the production of goods for commerce, or in a closely related process or occupation directly essential to the production thereof, as provided by Sec. 3(j) of the Act, Sec. 203(j), Title 29 U.S.C.A., and dismissed the complaint. In his opinion, their work was too remote or tenuous to be so considered since there was no reasonably close relationship to the production of goods for commerce either from the standpoint of place, time, or purpose.

■ Appellant urges upon us the settled rule, supported by citation of numerous cases, that employees engaged in producing raw materials for sale and further processing within the state are engaged in production of goods for commerce if the final product is shipped out of the state, even though the materials may be further processed by a second or third employer and have lost their original identity before they move in commerce. D. A. Schulte, Inc., v. Gangi, 328 U.S. 108, 66 S.Ct. 925, 90 L.Ed. 1114; Warren-Bradshaw Drilling Co. v. Hall, 317 U.S. 88, 63 S.Ct. 125, 87 L.Ed. 83. Particular reliance is placed upon Reynolds v. Salt River Valley Water Users Ass'n, 9 Cir., 143 F.2d 863, certiorari denied 323 U.S. 764, 65 S.Ct. 117, 89 L.Ed. 611; Farmers Reservoir & Irrigation Co. v. McComb, 337 U.S. 755, 69 S.Ct. 1274, 93 L.Ed. 1672, rehearing denied 338 U.S. 839, 70 S.Ct. 31, 94 L.Ed. 513; West Kentucky Coal Co. v. Walling, 6 Cir., 153 F.2d 582; Chapman v. Home Ice Co. of Memphis, 6 Cir., 136 F.2d 353, certiorari denied 320 U.S. 761, 64 S.Ct. 72, 88 L.Ed. 454.

We recognize the broad scope of such rulings in the field of inanimate products. But no ruling goes so far as to apply the rule to food consumed by a *living* animal, by which it is digested and eliminated and is no longer in existence. A case involving the cooking of meals for maintenance-of-way employees of an interstate carrier, in which coverage was denied, appears to us more closely in point. McLeod v. Threlkeld, 319 U.S. 491, 63 S.Ct. 1248, 87 L.Ed. 1538.

■ The cases cited above, which are particularly relied upon by appellant,

were decided prior to the 1949 amendment of Sec. 3(j) of the Act. At that time the statutory definition of "production of goods" included working in any process or occupation "necessary to the production thereof." The amendment reworded that portion of the section so as to read "working * * * in any *closely related* process or occupation *directly essential* to the production thereof, * * *." (Emphasis added.) Before the amendment, coverage under the Act was held by the courts to include a number of situations where work, although related or necessary to the production of the goods under consideration, was not directly essential to such production. McComb v. Super-A Fertilizer Works, 1 Cir., 165 F.2d 824; E. C. Schroeder Co., Inc. v. Clifton, 10 Cir., 153 F.2d 385, certiorari denied 328 U.S. 858, 66 S.Ct. 1351, 90 L.Ed. 1629; Martino v. Michigan Window Cleaning Co., 327 U.S. 173, 66 S.Ct. 379, 90 L.Ed. 603, rehearing denied 327 U.S. 816, 66 S.Ct. 699, 90 L.Ed. 1039. It was the purpose of the 1949 amendment to remove such cases from coverage under the Act. In order for coverage to exist the amendment requires a closer and more direct relationship to the producing activity than existed in such cases. Conference Report on the Amendment of the Fair Labor Standards Act of 1938, U.S. Code Congressional Service, 81st Congress, First Session, pp. 2253–2254; McComb v. Factory Stores Co. of Cleveland, D. C., 81 F.Supp. 403; 6 Cir., 179 F.2d 238; Hawkins v. E. I. DuPont De Nemours & Co., 4 Cir., 192 F.2d 294, 296; Juarez v. Kennecott Copper Corp., 10 Cir., 225 F.2d 100, 103. Whether the rulings in Reynolds v. Salt River Valley Water Users, Ass'n, supra, and Farmers Reservoir & Irrigation Co. v. McComb, supra, would be the same under the 1949 amendment, we do not know and it is unnecessary to decide. We do know from the express statement in the Conference Report that coverage would no longer exist under the 1949 amendment in McComb v. Super-A Fertilizer Works, supra, 1 Cir., 165 F.2d 824. The factual situation in that case is closely analogous to the case we are presently considering. The ruling in Zall v. N. L. R. B., 9 Cir., 202 F.2d 499, in addition to involving a different statute, seems to be based in part at least upon McComb v. Super-A Fertilizer Works, supra, without consideration of the amendment.

In 10 East 40th St. Bldg. v. Callus, 325 U.S. 578, 65 S.Ct. 1227, 1229, 89 L. Ed. 1806, the Supreme Court pointed out that due to the wording of the Act enforcement of it would inevitably involve the courts in drawing nice lines from case to case in attempting to apply the general terms of the statute to an infinite variety of complicated industrial situations. In doing so, it said that the courts should keep in mind the settled rule that merely because an occupation is indispensable, in the sense of being included in a long chain of causation which brings about so complicated a result as finished goods, does not bring it within the scope of the Act; and that courts cannot be unmindful that Congress in enacting the statute plainly indicated its purpose to leave local business to the protection of the states. The Court stated that remoteness of a particular occupation from the physical process is a relevant factor in drawing the line, that when lines have to be drawn they are bound to appear arbitrary when judged solely by bordering cases, that lines are not the worse for being narrow if they are drawn on rational considerations, that the problem is not an exercise in scholastic logic, and dialectic inconsistencies do not weaken the validity of practical adjustments, as between the State and Federal authority. In denying coverage under the Act, although having previously ruled that coverage existed in cases involving similar factual situations, the Court drew the narrow line which it thought was required by practical considerations, and held that the business there involved was a distinctive enterprise not to be treated as a part of the commercial process which Congress dealt with in the Fair Labor Standards Act.

**252**

We are of the opinion that the reasoning of the Court in 10 East 40th St. Bldg. v. Callus, supra, is applicable here. Adopting the language used in making the ruling in that case, the business of the appellee "*spontaneously* satisfies the common understanding of what is local business and makes the employees * * * engaged in local business." (Emphasis added.) Apparently this was the view taken by the District Judge who made his ruling dismissing the action from the bench immediately following the completion of the evidence in the case. It has strong support in the ruling of the Supreme Court in McLeod v. Threlkeld, supra, 319 U.S. 491, 63 S.Ct. 1248, 87 L.Ed. 1538.

The judgment is affirmed.