Harold T. **BLAIN** et al., Plaintiffs,

v.

**GENERAL ELECTRIC COMPANY,**
Defendants.

Civ. A. No. 6261.

United States District Court,
W. D. Kentucky,
Louisville Division.

July 19, 1971.

--◆--

Raymond L. Sales, Louisville, Ky., for plaintiff.

Galen J. White, Jr., Louisville, Ky., for defendant.

## OPINION

BRATCHER, District Judge.

This action under Section 16(b) of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 et seq., was removed from the Common Pleas Branch, Jefferson Circuit Court, Jefferson County, Kentucky.

Plaintiffs claim from defendant, General Electric Company, overtime pay under Section 7 of the Act for a scheduled 18 minute meal period. They also demand liquidated damages, attorney's fee and costs.

After trial without a jury, this Court holds that plaintiffs' complaint as amended should be dismissed.

### Findings of Fact

Plaintiffs are 62 present and former hourly employees of defendant, General Electric Company, who have been employed all or a part of the period from April 14, 1968 to date of trial in the Range Department tool room, Section 204, in Building 2 at defendant's facility known as Appliance Park in Jefferson County, Kentucky. Substantially all plaintiffs, while employed in Section 204, have been members of the Kentucky Skilled Craft Guild, a labor union, which was succeeded in 1970 by Lodge 2049 of the International Association of Machinists and Aerospace Workers, District 27 (AFL–CIO), hereafter referred to as the "Union."

Defendant is a New York corporation doing business in Kentucky at Appliance Park, where it manufactures household appliances. Its employees are regularly engaged in commerce and in the production of goods for commerce within the meaning of the Fair Labor Standards Act.

The employees in Section 204 maintain, repair and modify manufacturing tools and dies. This work requires great individual skill and responsibility, and these employees work with minimal supervision.

Section 204 is a three shift operation which has a policy of "following a job" which may be worked on continuously through successive shifts until completion. The most effective way of achieving this is face-to-face communication between the incoming and outgoing shifts. To accomplish this it is desirable to have some overlap among shifts.

In January, 1968, and for some time prior thereto, the schedules of the three shifts were: First shift from 6:48 A.M. to 3:18 P.M.; second shift from 3:18 P.M. to 11:48 P.M.; and third shift from 10:30 P.M. to 7:00 A.M. Each shift had a 30 minute meal period.

The unequal overlap created by this schedule resulted in the inefficient utilization of manpower and equipment and caused inadequate communication between successive shifts. In late 1967, the Section 204 manager, Shaughnessy, began to explore with the employees alternative ways of adjusting the work schedule to achieve a uniform overlap.

In February, 1968, Shaughnessy met separately with the Union shop steward on each shift. He asked each steward to poll his shift to determine whether the employees wished to retain the 30 minute meal period with a 30-minute shift overlap or to change to an 18 minute meal period with an 18 minute overlap

(payroll time is measured by tenths of an hour).

A short time later the stewards reported to Shaughnessy that most employees preferred the 18 minute meal period. However, the three shifts could not agree among themselves on starting and quitting times which would accomplish uniform shift overlap.

As a result of the continuing disagreement among the shifts about starting and quitting times Shaughnessy eventually determined, as he had a right to do under the Union agreement, to set the starting and quitting times for each shift with a scheduled 18 minute meal period. He picked the 18 minute period based on the employees' preference as expressed by the stewards. The stewards were orally advised of the new schedule in mid-March, 1968.

Thereafter some employees complained about the starting and quitting times. Shaughnessy then asked plaintiff, Blain, at the time President of the Union and its principal spokesman, to find out from the employees whether they wanted an 18 minute or a 30 minute meal period. Shaughnessy told Blain that he would set the starting and quitting times.

Blain shortly thereafter reported to Shaughnessy that the employees chose the 18 minute meal period. Shaughnessy thereupon advised Blain that he would put the 18 minute meal period into effect with starting times of 7:00 A.M., 3:00 P.M. and 11:00 P.M. Blain replied that the schedule would have the support of the Union.

Shortly after his conversation with Blain, Shaughnessy posted the following schedule, effective April 14, 1968: First shift from 7:00 A.M. to 3:18 P.M. with a meal period from 10:54 to 11:12; second shift from 3:00 P.M. to 11:18 P.M. with a meal period from 7:30 P.M. to 7:48 P.M.; and third shift from 11:00 P.M. to 7:18 P.M. with a meal period from 3:00 A.M. to 3:18 A.M.

At or about this same time, Section 204 employees were advised by Shaughnessy through the stewards and Blain that if they were dissatisfied with the 18 minute meal period they should file a grievance and Shaughnessy would immediately change back to a 30 minute meal period. This offer has since been repeated several times. Shaughnessy has also offered from time to time to revise the starting and quitting times.

From April 14, 1968 to the date of trial no grievance has been filed protesting the scheduled 18 minute meal period; nor has Shaughnessy ever been asked informally to change the 18 minute meal period to a 30 minute meal period. In fact the 18 minute meal period is preferred by the great majority of the Section 204 employees.

The scheduled 18 minute meal period for each shift occurs at the same time each day and is intended and used as a meal period. The meal period during each shift is immediately preceded by a paid wash-up period at least five minutes long. After using the nearby washroom facilities, most employees regularly begin eating during the wash-up period. They finish their meals before the end of the meal period. During the wash-up period and meal period no employees work; nor are they available for work. No signal is given to end the meal period precisely on the minute.

About six or eight first shift employees eat in the cafeteria which is a very short distance from Section 204. The cafeteria is only open on the first shift. The remaining employees on all shifts either bring their lunch boxes or bags, purchase their meals at a fully stocked canteen, or eat "TV" dinners which are kept in refrigerators and then heated in stoves located in the tool room. A few employees use these facilities to prepare more elaborate meals. The employees who do not eat in the cafeteria generally eat at the work tables in the tool room but they are not required to be there. Some employees also read, play cards or sleep during the meal period; a few visit with friends at

other locations. The employees have adequate time in which to eat their meals.[1]

In addition to the meal periods, the first and second shifts take casual breaks at their convenience during the work day. The employees are paid for these rest breaks. On the third shift there are two regularly scheduled ten-minute paid rest breaks before and after the meal period. There is also a paid wash-up period of at least five minutes prior to the end of each shift.

### Conclusions of Law

The parties and the subject matter of this action under the Fair Labor Standards Act are properly before this Court. 28 U.S.C. §§ 1337, 1391, 1441.

The primary aim of the Act is to protect employees from the exploitation of substandard wages and excessive hours. 29 U.S.C. § 202; e. g. Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 65 S.Ct. 895, 89 L.Ed. 1296 (1945). The Act provides in 29 U.S.C. § 207 that "no employer shall employ any of his employees" for more than forty hours a week unless they are paid one and a half times their regular rate for all time in excess of forty hours.

Under the Act " 'Employ' includes to suffer or permit to work." 29 U.S.C. § 203(g). But the Act does not define "work" and leaves the definition to the courts.

In Tennessee C. I. & R. Co. v. Muscoda Local 123, 321 U.S. 590, 598, 64 S.Ct. 698, 88 L.Ed. 949 (1944), the Supreme Court defined "work" as including "physical or mental exertion" for the employer's benefit. In subsequent cases the Court held that "work" is not limited to "exertion"; it also includes any time which the employee spends in behalf of his employer such as stand-by or waiting time. Armour & Co. v. Wantock, 323 U.S. 126, 65 S.Ct. 165, 89 L.Ed. 118 (1944); Skidmore v. Swift &

Co., 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944). However, where an employee is completely relieved of his employment obligations during any particular time and can use that time for his own purposes, he is not entitled under the Act to be compensated for the time. See 29 C.F.R. § 785.16.

■ In this action plaintiffs have the burden of proving by a preponderance of the evidence that the regularly scheduled 18 minute meal period must be counted as hours worked and thus is compensable under the Act. Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1945); Bloch v. Bell, 63 F.Supp. 863 (W.D.Ky.1945), aff'd, 152 F.2d 962 (6th Cir. 1946).

Plaintiffs rely on the Interpretative Bulletin on Hours Worked issued by the Wage-Hour Administrator. 29 C.F.R. Part 785. They urge that the regularly scheduled 18 minute meal period cannot qualify as a bona fide meal period and is no more than a compensable rest break. The particular Sections of the Bulletin in question are as follows:

### "REST AND MEAL PERIODS

#### Section 785.18—REST.

"Rest periods of short duration, running from 5 minutes to about 20 minutes, are common in industry. They promote the efficiency of the employee and are customarily paid for as working time. They must be counted as hours worked. Compensable time of rest periods may not be offset against other working time such as compensable waiting time or on-call time. (Mitchell v. Greinetz, 235 F.2d 621, 13 W.H. Cases 3 (C.A.10, 1956); Ballard v. Consolidated Steel Corp., Ltd., 61 F.Supp. 996 (S.D.Cal.1945))

#### Section 785.19—MEAL.

"(a) *Bona fide meal periods.* Bona fide meal periods are not worktime.

---

1. One plaintiff indicated that the meal period was too restrictive, but he also recognized that he was an unusual specimen and admitted that he had not even been satisfied with the 30 minute meal period. He left the Court with the impression that if he had more time he would simply bring more food to eat.

Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be completely relieved from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. (Culkin v. Glenn L. Martin, Nebraska Co., 97 F.Supp. 661 (D.Neb.1951), aff'd 197 F.2d 981 (C.A.8, 1952), cert. denied 344 U.S. 866 [73 S.Ct. 108, 97 L. Ed. 671] (1952) rehearing denied 344 U.S. 888 [73 S.Ct. 183, 97 L.Ed. 687] (1952); Thompson v. [F. W.] Stock & Sons, Inc., 93 F.Supp. 213 (E.D.Mich. 1950), aff'd 194 F.2d 493 (C.A.6, 1952); Biggs v. Joshua Hendy Corp., 183 F.2d 515 (C.A.9, 1950), 187 F.2d 447 (C.A.9, 1951); Walling v. Dunbar Transfer and Storage Co., 3 W.H. Cases 234; 7 Labor Cases para. 61,565 (W.D.Tenn.1943); Lofton v. Seneca Coal and Coke Co., 2 W.H. Cases 669; 6 Labor Cases para. 61,271 (N.D.Okla 1942); aff'd 136 F.2d 359 (C.A.10, 1943); cert. denied 320 U.S. 772 [64 S.Ct. 77, 88 L.Ed. 462] (1943); Mitchell v. Tampa Cigar Co., 36 Labor Cases para. 65,198, 14 W.H. Cases 38 (S.D.Fla.1959); Douglass v. Hurwitz Co., 145 F.Supp. 29, 13 W.H. Cases (E.D.Pa.1956))

"(b) *Where no permission to leave premises.* It is not necessary that an employee be permitted to leave the premises if he is otherwise completely freed from duties during the meal period."

Sections 785.18 and 785.19, while not binding on this Court, do provide an insight into the Wage-Hour Administrator's enforcement policy in determining whether or not the meal period is compensable. 29 C.F.R. § 785.2.

This Court has carefully considered the time periods and other criteria in each Section, but finds that these Sections do not support the conclusion urged by plaintiffs. Although there is little authority on the issue squarely presented in this action, no court has held or implied that a meal period of less than 30 minutes or even less than 20 minutes is necessarily compensable.

■ This Court believes that while the duration of the meal period is a factor to be considered, it is not solely determinative of the question.

We find support for our view in the cases included in Section 785.19. In Douglass v. Hurwitz Co., 145 F.Supp. 29, 31 (E.D.Pa.1956), an illiterate wagon driver was held entitled to the proper minimum wage and overtime pay each day (". . . less 15 minutes of completely free time during the lunch period)".

The other cases deal with alleged meal periods of 30 minutes or more in which the employees were required to work or to be available for work during the period. They only make the point that no matter how much time is designated as a meal period, if the employees are not completely free for the purpose of eating a meal, it is not a bona fide meal period and must be counted as hours worked. *E. g.* Thompson v. F. W. Stock & Sons, Inc., 93 F.Supp. 213 (E.D.Mich.1950), aff'd, 194 F.2d 493 (6th Cir. 1952).

Further, meal periods of less than 30 minutes have been approved over the years by the Wage-Hour Administrator. A 1943 Administrator's opinion approved a 15 minute meal period negotiated by a company and union, Wage-Hour Administrator's Opinion Letter dated December 21, 1943, from Legal Field Letter No. 91, and in 1964 the Administrator opined that a meal period of less than 20 minutes need not be paid if it is otherwise bona fide under the particular circumstances of the case. Opinion Letter No. 303, October 13, 1964 (1961–1966 CCH Lab.Law Rptr. Wage-Hours Adms. Rulings ¶ 30,906).

**862**

■ This Court is thus persuaded that the 30 minute meal period referred to in Section 785.19 is only a broad guide to the Administrator's enforcement policy. It is not an inflexible standard which binds either the Wage-Hour Administrator or the courts. The essential consideration in any case is whether the employees are in fact completely relieved from work for the purpose of eating a regularly scheduled meal.

■ It follows from this conclusion that once it is established that during the designated meal period employees are completely relieved from work for the purpose of eating a meal, the criteria of Section 785.18 are not relevant in determining the bona fides of the meal period. As the Administrator stated in his 1943 letter, *supra:*

"Necessarily, whether or not a so-called lunch period is a bona fide lunch period or merely a rest period depends upon the object and purpose for which the cessation of work occurs . . . ."

■ Although Section 785.19 speaks of "special conditions" in evaluating a meal period of less than 30 minutes, this Court does not believe that a shorter meal period shifts the burden of proof from plaintiffs to defendant to demonstrate that there are peculiar or unique circumstances which justify a shorter meal period. All that is required is that the particular facts of each case be examined to determine if the period in question is in fact a bona fide meal period.

■ In this case plaintiffs are relieved from duty for the purpose of eating a meal during their regularly scheduled 18 minute meal period. Immediately preceding the meal period is a wash-up period at least 5 minutes long which plaintiffs use both for washing and for eating. Plaintiffs, who are highly skilled and work with minimal supervision, are not ordered back on the job the very moment the meal period ends. The weight of the credible evidence is that plaintiffs have enough time to eat.

Further, prior to the time the 18 minute meal period was instituted in April, 1968, plaintiffs and the Union representatives were thoroughly consulted by defendant's management and expressed a preference for the shorter meal period. It is also significant that after the 18 minute meal period was put into effect, plaintiffs and the Union, though given the explicit opportunity to return to a 30 minute meal period, chose not to do so. See Jackson v. Air Reduction Co., 402 F.2d 521, 524 (6th Cir. 1968).

Plaintiffs urge that their acceptance of the 18 minute meal period constituted an unlawful contract which cannot bar their rights under the Act. E. g. Martino v. Michigan Window Cleaning Co., 327 U.S. 173, 178, 66 S.Ct. 379, 90 L.Ed. 603 (1946). This argument is without merit under the circumstances of this case.

■ The plaintiffs' expressed preference for the 18 minute meal period and the concurrence of the Union did not create an unlawful agreement with defendant to violate any substantive provisions of the Act. Their acceptance of the 18 minute meal period is only further evidence of the adequacy of the meal period in this case.

Finally, plaintiffs gained from the shorter meal period by spending less time in the plant.

Under all the circumstances recited above, this Court finds that the regularly scheduled 18 minute meal period in Section 204 is a bona fide meal period. It is not a part of hours worked and hence is not compensable under the Fair Labor Standards Act.[2]

For the foregoing reasons the complaint as amended will be dismissed and judgment for defendant entered accordingly.

2. In view of the above conclusions, this Court does not reach the question of the applicability of the Portal-to-Portal Act, 29 U.S.C. §§ 251, 254, raised by defendant as an additional ground for dismissal.