**Billy H. FORRESTER, Plaintiff,**

v.

**ROTH'S I. G. A. FOODLINER, INCORPORATED, an Oregon Corporation, Defendant.**

**Civ. No. 78–740.**

United States District Court, D. Oregon.

Aug. 24, 1979.

William B. Wyllie, Salem, Or., for plaintiff.

Valerie J. Vollmar, Salem, Or., for defendant.

## OPINION

JAMES M. BURNS, District Judge:

On August 10, 1978, plaintiff (Forrester) filed this case, asserting a claim against defendant Roth's IGA Foodliner, Inc. (Roth's), under 29 U.S.C. §§ 207 and 216(b) for recovery of $20,648.16 in unpaid overtime compensation for the period from May 30, 1976, through May 29, 1978. Forrester also requested an equal amount in liquidated damages plus an award of attorney fees. On April 13, 1979, defendant moved for summary (or partial summary) judgment on four issues. Defendant's motion claimed:

a) Plaintiff's claim is barred by the applicable collective bargaining agreement;

b) Plaintiff is estopped by his submission of time sheets omitting the overtime now asserted;

c) The two-year statute of limitations established by 29 U.S.C. § 255(a) bars the claim with regard to pay periods ending on or before July 24, 1976; and

d) The claim for liquidated damages is invalidated by the defendant's good faith and reasonable belief that its employment practices did not violate the Fair Labor Standards Act.

I have concluded that the plaintiff's failure to report his alleged overtime accurately on his time sheets during the claim period estops him from now asserting that he worked those hours without the compensation required by the Act. Thus, it is unnecessary to rule upon defendant's other three grounds for summary judgment.

The doctrine of equitable estoppel, as applied by the Ninth Circuit Court of Appeals, "is a rule of justice which, in its proper field, prevails over all other rules." *United States v. Georgia-Pacific Co.*, 421 F.2d 92, 96 (9th Cir. 1970). Its application in any case depends upon the presence of four elements:

. . . (1) The party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury. *California State Board of Equalization v. Coast Radio Products*, 228 F.2d 520, 525 (9th Cir. 1955).

This four-element test has been reaffirmed recently in this Circuit. *United States v. Wharton*, 514 F.2d 406, 412 (9th Cir. 1975); *United States v. Ruby Co.*, 588 F.2d 697, 703

(9th Cir. 1978). Finding no genuine issue as to any material fact necessary for the application of this four-element test to the case now before me, I find and hold that defendant is entitled to judgment as a matter of law.

## I. PLAINTIFF'S KNOWLEDGE OF THE FACTS.

Forrester asserts that, during the claim period, he worked each week 10 hours of overtime for which he was not compensated by the defendant. He knew during this period that he was putting in unpaid overtime work and even compiled a monthly list of "all the free or unpaid time I put in." Forrester Dep. Ex. 1. Forrester said he prepared this list of his uncompensated overtime working hours contemporaneously with his work at the store. Forrester Dep. 38–42. There is no doubt that plaintiff had knowledge of what he now asserts to have been the facts of his overtime work during the claim period.

## II. PLAINTIFF'S INTENT THAT HIS CONDUCT BE ACTED UPON BY DEFENDANT.

The store paid the plaintiff on the basis of the weekly time sheets prepared by the manager of the bakery department. Forrester himself was manager of the bakery department during all except the first three weeks of the claim period and he himself submitted the weekly time sheets to the store manager. Forrester knew that overtime was supposed to be reported on the time sheets and that the store regularly paid for such reported overtime. Forrester Dep. 26, 28–29. Forrester himself was paid for all of the overtime he reported, which amounted to approximately 8 hours per week during the claim period. He testified that, had he reported the additional 10 hours per week of overtime work he now claims, he would have been paid. Forrester Dep. 60–61. There can be no question that the plaintiff intended that his conduct—reporting of hours worked on the time sheets—be acted upon by the defendant.

## III. DEFENDANT'S IGNORANCE OF THE TRUE FACTS.

Affidavits of store officials show they did not know that Forrester had been working uncompensated overtime hours. Tybloom Affidavit, p. 3; Marsland Affidavit, p. 2; McCammon Affidavit, pp. 2–3. Forrester did not mention any unpaid overtime work to any store official prior to filing his complaint on August 10, 1978. Forrester Dep. 46–48. The only "evidence" that any store official was aware of this alleged unpaid overtime is Forrester's statement that he occasionally visited with store manager Larry McCammon during the period (about 2:30 to 5:00 p. m. each weekday) when he was putting in the unpaid overtime work. Forrester Dep. 57. McCammon, on the other hand, stated that he had no knowledge of any overtime hours for which Forrester was not paid. McCammon Affidavit, p. 2. Even if the store manager had been aware of Forrester's usual working hours (6:00 a. m. to 2:30 p. m. on most days, 4:00 a. m. to 12:30 p. m. on most other days, and occasionally 3:00 a. m. to 11:30 a. m. or 5:00 a. m. to 1:30 p. m.), he would upon inquiry into the wage records have learned that Forrester was already being paid for about 16 hours of overtime during each two-week pay period. Only if he had retrieved the bakery department's weekly time sheets would the store manager have discovered that Forrester was regularly reporting 8 hours of overtime every Saturday, not 2 or 3 hours of overtime each weekday. The plaintiff has produced no evidence that McCammon or any other store official inquired into the accuracy of the time sheets submitted by the bakery department. Nor has plaintiff produced any evidence that any store official had any duty so to inquire. Under these circumstances, I find that no genuine issue exists as to the material fact that the defendant was ignorant of the version of the facts now asserted by the plaintiff.

## IV. DEFENDANT'S RELIANCE UPON PLAINTIFF'S CONDUCT.

Without question, the defendant relied upon the time sheets submitted by the

plaintiff in paying him and in its attempt to comply with the provisions of the Fair Labor Standards Act. The plaintiff is not entitled now to renounce the accuracy of the time sheets to the legal detriment of the defendant.

## V. APPLICATION OF EQUITABLE ESTOPPEL TO CLAIMS UNDER THE FAIR LABOR STANDARDS ACT.

Forrester has questioned whether principles of equitable estoppel may be applied by the court to bar a claim for unpaid overtime compensation under the Act. Persuasive case authority indicates that his claim is subject to equitable estoppel.

In *Brumbelow v. Quality Mills, Inc.*, 462 F.2d 1324 (5th Cir. 1972), the court estopped an industrial homeworker, who had allegedly under-reported her hours of work because the firm had indicated that it would fire anyone who could not assemble a certain number of units per eight-hour day, from later asserting the existence of uncompensated overtime.

> . . . There was no evidence that the employer required the entry of false reports of hours worked, but rather appellant concedes that no supervisory person . . . ever told her to do so. There is no evidence that the company in any manner encouraged workers to falsely report . . . and no evidence that it knew or should have known that appellant, unable to perform up to the employer's standard, was giving false information to conceal that fact in order to hold on to her job. 462 F.2d at 1327.

The court ruled estoppel appropriate under this set of circumstances, which is reasonably similar to the situation of Forrester in view of the lack of any genuine issue of fact as to defendant's lack of knowledge that Forrester was under-reporting his overtime working hours, as he now claims.

In *Wirtz v. Harrigill*, 214 F.Supp. 813 (S.D.Miss.1963), the court stated:

> . . . An employee cannot be heard in a court of equity to say that he *deliberately* and voluntarily falsified reports which he was obligated to make truthfully and accurately to the employer and

then prevail on account of any such iniquitous misconduct. 214 F.Supp. at 815. The Fifth Circuit Court of Appeals affirmed this decision but specifically disclaimed any reliance upon the district court's "occasional references which might seem to discuss this in terms of inequitable conduct, principles of estoppel, or the binding character of records knowingly kept inaccurately by an employee." 328 F.2d 963, 964 (5th Cir. 1964). Eight years later in *Brumbelow* the Fifth Circuit did adopt the estoppel approach.

In other cases federal courts have not estopped various claims under the Fair Labor Standards Act because of inaccurate reporting of working hours by employees. In *Wirtz v. Carolina Co.*, 255 F.Supp. 417 (M.D.N.C.1966), the court did not estop the claims for unpaid minimum wages by homeworkers whose "recorded hours reflect[ed] nothing more than the result of dividing production requirements by actual production, rather than the actual number of hours worked." 255 F.Supp. at 424. The court stated that the company could not rely upon the employees' reported working hours,

> . . . particularly when [the defendants] knew, or had reason to believe, the information as inaccurate. By requiring homeworkers to meet minimum production schedules as a condition of further employment, the defendants indirectly encouraged homeworkers to maintain inaccurate records. [citations omitted] 255 F.Supp. at 424.

Despite this reasoning, the court rejected the plaintiffs' claims for uncompensated overtime due to the lack of credible evidence. The *Brumbelow* court distinguished the circumstances in that case from those in *Carolina Co.*: "The court found that the employer knew or had reason to believe that the reported information was inaccurate. Those factors are not present in the case before us." 462 F.2d at 1327. Nor is there any genuine issue here as to the fact that defendant neither knew nor had reason to believe that Forrester was deliberately under-reporting his overtime.

In *Burry v. National Trailer Convoy, Inc.*, 239 F.Supp. 85 (E.D.Tenn.1963), the court ruled that the plaintiff's inaccurate time reports did not estop his subsequent claim for unpaid overtime compensation because his employer had knowledge of the inaccuracy.

. . . [P]laintiff asked that he be placed on an eight-hour day, and Mr. Humburg either stated or led him to believe that this could not be done, telling him, in substance, that the contract had been worked out in accordance with the wage and hour law . . . .

Secondly, we think that these reports are sufficient on their face to bring knowledge to the company the amount of time stated on them was not accurate. There is testimony to the effect that Mr. Burry complained to Mr. Privitt in 1961 about his long hours at work and Mr. Privitt replied, in substance, that his hours should be shown on the reports . . . gradually. The reports for the next two months show that he did work during those months of over 100 hours per week. Soon after receipt of the second report, Mr. Burry's work was terminated. 239 F.Supp. at 89.

In this case Forrester did not inform his employer that he had been working uncompensated overtime until more than three months after the claim period.

In *Freeman v. Blake Co.*, 84 F.Supp. 700 (D.Mass.1949), the plaintiff testified she had not reported her overtime (about 8 hours per week) because her employer had told her not to, but the court found that the employer had been relying upon her false reports.

. . . This false reporting by the employee, this silence by her and this reliance by the employer on that reporting and silence apparently do not constitute what a majority of the court above me regards as an estoppel. *George Lawley & Son Corp. v. South*, 140 F.2d 439, 443 (1st Cir. 1944). I must accept their view of the law. 84 F.Supp. at 704.

In *George Lawley & Son*, however, the jury had already made a finding that the plaintiff had not acted deceitfully in failing to record and report his overtime hours.

. . . In short I think we should construe the Act in the light of the strong equities here disclosed in favor of the defendant [employer] . . . . .

My associates, however, do not share this view. They have come reluctantly to the conclusion that since there is an express finding that the plaintiff had practiced no deceit and that he was not estopped, the statute must be applied literally according to its words and recovery allowed for the full amount permitted by the Act. 140 F.2d at 443 (opinion of the court; no dissent filed).

The facts and procedural histories of the *George Lawley & Son* and *Freeman* cases are thus distinguishable.

In *Wilson Oil Co. v. Hardy*, 49 N.W. 337, 164 P.2d 209 (1945), the employees were paid according to a prearranged number of hours per week regardless of the actual number of hours worked. The court refused to estop the plaintiff's claim because the employer knew that unpaid overtime was being worked. Distinguishing this situation from rulings applying estoppel, the court stated:

. . . It is sufficient to say that in many of those cases we have clear deception practiced upon the employer, who, it is shown, or indicated by the language of the decisions, would, under the agreement, have been obligated to pay for any time actually employed by the workmen over and above that certified, had he known of the actual time so put in. 164 P.2d at 215.

In *Wilson Oil* the plaintiff had not concealed from his employer the fact that he had been working more than a standard workweek but had worked those hours, along with the company's other employees, pursuant to the employment contract. The court thus concluded, "Neither employer nor employee may contract for an amount that would result in pay less than the minimum specified by statute," 164 P.2d at 215, a proposition previously stated in several opinions of the United States Supreme

**634**

Court. See *Martino v. Michigan Window Cleaning Co.,* 327 U.S. 173, 66 S.Ct. 379, 90 L.Ed. 603 (1946); *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123,* 321 U.S. 590, 64 S.Ct. 698, 88 L.Ed. 949 (1944).

Forrester argues that "it seems illogical to hold that an employee cannot expressly contract with his employer to accept less than the Fair Labor Standards Act requires but that he can receive less because of estoppel." To the contrary, the Act disallows agreements between employers and employees to pay and accept less than standard wages so that employees are not pressured by economic necessity to accept such arrangements, which would defeat the Act's purpose. No similar rationale protects employees who deliberately under-report their overtime hours. Had Forrester accurately reported his working hours in the first place, the store could have complied with the Act by paying the overtime or by hiring additional employees to perform the work if it were dissatisfied with the overtime thus resulting. As it was, Forrester himself prevented the store from complying with the Act by failing to report his overtime hours accurately.

The other cases cited by plaintiff are similarly inapplicable to the issue of estoppel posed here.

The defendant's motion for summary judgment on the ground that the plaintiff's claim is estopped by his deliberate under-reporting of his alleged overtime working hours is granted. The Clerk will enter judgment accordingly.